Good morning, Your Honors. May it please the Court, I'm Jeremiah Hudson. I represent Appellant Chelsea Brooke Dudley, who's here today. I understand we have 15 minutes per side. I'd like to reserve four minutes for rebuttal. All right. As I said, I told counsel last time, that's your total time. We'll try to watch it. If we take you over, we'll have a little grace there, but watch your time. Thank you, Your Honor. I'll start with Interim Dean Rourke's grade change and the subsequent degree revocation. On November 2nd, 2022, Interim Dean Rourke from Boise State University sent Ms. Dudley a letter informing her that he had concluded that she had engaged in misconduct and that as a result, he would be changing her final grade in her internship from a passing grade to a failing grade. Ms. Dudley had graduated six months prior and Interim Dean Rourke was not her professor of record, nor was he employed at the School of Social Work when she was a student there. As a result, the very next day, Ms. Dudley's degree was revoked by Mandy Nelson, who's a registrar and an appellee in this case. The practical reality is Ms. Dudley did not receive Dean Rourke's letter in the mail by the time her degree was revoked. She had no prior notice and no opportunity to be heard. Six days later, Boise State University sent Ms. Dudley's revised transcripts to the Idaho Division of Occupational and Professional Licensing informing them that Dudley's degree had been revoked. Although there are a couple of exceptions that appellees have not asserted in this case, some form of hearing is required before an individual is finally deprived of a property interest. And that comes from Matthew versus Eldridge. But most every due process case, procedural due process case, states that. Hearing and... So, Counsel, your client was granted a hearing. It may have come late in the perfect order of things, but she was granted a hearing. So what's the problem? Your Honor, the problem is that she was deprived of her property interest, her degree, prior to receiving that hearing. Okay. So if we go back and do the hearing again, what happens? Your Honor, we've alleged that the subsequent hearing was not sufficient to comply with our Constitution.  So your complaint is that even though she was granted a hearing at some point, that that hearing was inadequate. That's correct, Your Honor. In what respects? What is it, if you were to go back and we had a do-over, what is it that would happen the next time? What very specifically do you want out of a second hearing? Yes, Your Honor. What we think Ms. Dudley is entitled to under the Matthews factors is a neutral investigation. Part of the problem here was all of the allegations against Ms. Dudley in the subsequent process were derived from Interim Dean Rourke's letter, almost verbatim. And so that's the first and foremost. Second, she's entitled to cross-examine witnesses against her. Now, I looked at the sort of the order of proceeding here. And under what I saw, it appears that she was going to be given, this is the formal conduct hearing checklist, Exhibit B at ER 217. And it looks to me, after the complainant's presentation of information, that she can ask questions. She does have to direct them to the chairperson. And the chairperson can authorize or not authorize the questions. Is that not sufficient as cross-examination? Your Honor, that certainly says that in that sheet that you just referenced. But the witnesses would not show up. Boise State's witnesses wouldn't show up. What witnesses did not show up? Mike Dixon from Idaho Department of Health and Welfare. And why didn't he show up? Ms. Dudley asked him to show up, and he said he would not show up unless he got subpoenaed. So my understanding of the record is that the university's case was simply presented on paper, right? So there wouldn't be no ability to question. That's correct, Your Honor. Did your client know that that was going to happen before the hearing in light of the document that Judge Bivey just read from? Yes, Your Honor. And we asked for the witnesses to show up. But did she know at the outset, before the hearing started, that the university planned to go forward and present no live witnesses but just present declarations? That is correct. We brought that to the court's attention. And you're suggesting that this hearing cannot go forward without Dixon? Yes, Your Honor. And Boise State does or does not have subpoena authority? They did not have subpoena authority. If they don't have subpoena authority, then what is Boise State supposed to do? Well, Your Honor, Boise State was able to get an affidavit from Mr. Dixon, and so they had his cooperation. They didn't want him to show up. It's our position that they didn't want him to show up. Okay, but if they don't have subpoena authority, can Boise State proceed without Mr. Dixon? No, they can't, Your Honor. Really? What are they supposed to do? This is an independent Idaho department that has said she has violated our rules. We have conducted a careful investigation. Here is the evidence that we have been provided. We did this thoroughly. And we have come to the conclusion without any question that she violated our rules and that we would have dismissed her at the time had we known when she was an intern. So why can't Boise State act on that information? Your Honor, because Ms. Dudley has a side of the story that she is allowed to present. And the problem is they adopted Mr. Dixon's story without question. They didn't ask Ms. Dudley. They didn't inquire. They said, we're going to believe what Mr. Dixon said, and we don't care. This has very, very serious consequences for an institution. So, for example, if Boise State said, well, we can't act on this, it's quite possible that the Idaho Department of Health and Welfare would decide not to take Boise State students in the future, one, because they can't rely on them, and two, because the university is unwilling to discipline or respond to them in any way when there are complaints. So, I mean, there are some very, very severe institutional consequences here if Boise State chooses to ignore what Mr. Dixon has told them. And they don't have any way of subpoenaing him, and they have been told that it is definitive and he has provided them an affidavit. He's provided them with other written evidence. So why can't Boise State rely on that? Well, Your Honor, let me – I understand that you'd like to cross-examine him, and you do have the ability to cross-examine other people, but they're university administrators who are working off of what Mr. Dixon told them. Well, let me get to that point, Your Honor. Assistant Dean Law was the university administrator. She was the investigator, and we asked also to cross-examine her, to ask her questions about what was in her investigation report, and she refused. She was – Ms. Dudley asked her prior to the hearing, and she said no, that would not provide additional information. There's a rule that Boise State says that if you're going to call a witness, they have to provide something that's not in the record. But Ms. Dudley asked Assistant Dean Law at the hearing that Assistant Dean Law was at as the administrator if she would testify, and Assistant Dean Law said no. She is not here at the hearing as an investigator but as the administrator. So she wouldn't even answer questions about her own investigation report, which essentially stated that Dudley did what they accused her of doing. I want to drill down on that a little bit, because as I read the cases, to the extent that they say that the ability to cross-examine is required, they do so in the context of there being, I think the phrase in some of the case laws, a competing narrative. I mean, you can think of the sexual abuse on campus kind of cases, a he said, she said kind of a situation. I'm trying to figure out if that's this, because your client doesn't really admit but also doesn't seem to dispute that perhaps she actually did access files beyond her own. And so is it really a disputed narrative? Yes, Your Honor, and the reason that is is because Boise State University alleged that Ms. Dudley violated policy 2020 section 4AC, which is kind of the catch-all violation, you know, that she violated another university policy or law. Ms. Dudley alleged throughout that there was not another underlying policy or law that she was ever presented with that she violated. Okay, setting that aside, I want you to focus on the facts. Again, if we were to let this, if we were to reverse and say a new hearing has to be held and you get to cross-examine the university witnesses at least, we'll put Dixon aside for a second, what is it that you would ask on cross-examination? What do you think you could get? We would ask what precise university policy or law did you rely on to conclude that Ms. Dudley violated university policy 2020 section 4AC? So you want to nail down exactly what rule they're going after? No facts? No, there are facts certainly that we would ask about. They've accused Ms. Dudley of searching through the system when Ms. Dudley denied that she searched through the database. What she said was that she looked up her own file and that she was instructed that she could do that. Did she have an opportunity to say that at the hearing? She did, yes, Your Honor. Okay, and if she were to cross-examine law about that, what would law answer? What could law possibly answer? We don't know, Your Honor. Well, law— A.D. law doesn't know. Law can only rely on what Dixon has told her. And so she can say, well, I got this from Dixon, but that evidence is already in the record. Your Honor, I think that that leads to a situation in which universities, particularly universities in situations like this, can rely on other entities. And I understand that this situation isn't going to replicate itself overly often, but if they can rely on outside entities and then say, hey, we don't have subpoena power, we're just going to adopt what they say and come to the same conclusion on top of all that. You know, we actually do this all the time in this court. We rely on parallel actions in state bars, and we often don't question it. We'll offer reciprocal punishment based on the finding of another entity. I assume, Your Honor, in those situations there has been some due process that's been provided to the people. But you had some due process here. So is there anything besides—were you limited in your time? The 25 minutes seems just extraordinarily narrow to me. Yes, 25 minutes. Is that—did they hold you to the 25 minutes? Largely they did. They said they'd give us a little time over. We asked for 45 minutes for an opening statement, 25 minutes to question each witness, and 45 minutes for a closing, and they denied that. They said that that just was excessive. And so aside from the time, the cross-examination that you've identified, the neutral investigation, is there anything else that you would ask for in a second hearing? Yes, Your Honor. Your Honor, there are a number of evidence. In the notice, it said that the allegation occurred on April 12th of 2022. We received no evidence establishing that. We would—the unbiased investigation or neutral investigation is a pretty broad topic, and I have the specifics in the brief, but that includes things like not, you know, persuasively writing the brief in a way that says Dudley is guilty of what she's been accused of doing. And so, no, but beyond that, one of the biggest things is being provided the underlying policy or law that she allegedly violated. But this was stated in numerous letters and in numerous communications. What was stated, Your Honor, is from Mr. Dixon, and they—Boise State amended the complaint shortly before the hearing to only allege to take out references to the school's field manual, a violation of the school's field manual to the NASW Code of Ethics. And Mr. Dixon does not provide any policy. He says there's confidentiality standards that apply. Does not identify what those are, and IDAPA, Idaho Administrative Procedure Act, doesn't identify any of those, says they apply to the conduct. And in that case, the Student Conduct Board just adopted, just believed what he said. He wasn't there to give a credibility opinion. They just believed what he said. I mean, this just doesn't feel like a particularly consequential argument, that the idea of maintaining confidentiality of records that deal with child protective services and other things just seems so intuitive that it doesn't feel like it has to be written down in order to be enforced. Your Honor, Ms. Dudley did not do what she is accused of doing, and that's her position. But that's a very, very different question than that she wouldn't know that she was violating an ID, health and welfare policy, or university rules, or state rules, or national ethics. Your Honor, there was not, if you look at those policies, there's nothing in them that reference what Ms. Dudley did, accessing her own file, and potentially, possibly. But that all depends on your, of the Board, believing that your client only accessed her own file and no one else's file. That's very different from saying, well, I don't know what the standards are. Well, Your Honor, there were no witnesses at Boise State for credibility to be determined. And so Ms. Dudley, she said, she gave her testimony, and the Student Conduct Board had to rely on written statements of individuals. And they can't assess credibility based on that. And with that said, Your Honors, unless you have any more questions, I look like I'm out of time. We'll give you time for rebuttal. Thank you. Thank you. May it please the Court, Mike Kelly for appellee defended Boise State University, and the individual appellees who, at the time of the complaint, were also Boise State faculty, staff, and students. The appellees respectfully request, Your Honors, that this Court affirm the lower court's decision to grant our motion to dismiss the plaintiff's complaint. I think the arguments we've heard this morning, to date at least, while important, adequate process is obviously a very important issue, I think we're putting the cart before the horse. In this instance, the linchpin of the plaintiff's legal argument is really whether she had a protective property right in her education, in her grade, and in the potential expulsion from the school. Counsel, let's set aside the grade, the transcript problem, and focus on two things, both the degree and the expulsion. Surely, the university is not contending that she doesn't have a due process right when she's going to be expelled from school. That's pretty well established, right? This is Goss versus Lopez, a whole series of cases involving school discipline. How can the university plausibly contest that she's not entitled to due process before she's expelled? Oh, she certainly has a due process right, Judge. But we're looking at three, or now two, because the third procedural due process claim was not pursued here, that she needs that property right protected by the Constitution to make this claim, to ensure her causes of action. And so you're suggesting she has no right whatsoever to due process before she's expelled? Well, there's a difference between having the due process and having the procedural due process in the property right sense that she has some type of entitlement to her degree, her grade, and the expulsion issue. What is the difference? I'm not following the difference at all. Well, Judge, as the Ninth Circuit has indicated in the Dovey-White case, we look at state-specific rules, law, and procedures to determine if somebody has a property right in higher education. So if we look at that, Idaho's State Board policy, Roman numeral 3E1, it's couched in mandatory language. The university has to either deny or grant conferral of a degree upon completion of the program of instruction. So why doesn't that create a property right? All that does, Judge, is provide the universities with the policies and procedures to either convey or not convey that policy. If you turn it around, the board policies also allow the universities to discipline, reprimand, or expel former students because of actions that they took while at the university. But a student or family pays for four years of tuition, completes the program requirements. You're supposed to, pursuant to this policy, grant the degree. How is that not a property right? Well, Judge, that's more of a contract issue. And again, the Idaho courts have never, ever, as far as K-12 education, there is a constitutional section that provides for free education. There is no such constitutional, statutory, or case law requirement or procedure that gives that right to a person in higher education. They pay their tuition, they attend their classes, all with the idea that they're getting the education in exchange for that. You know, counsel, I asked one of my clerks this morning to pull a diploma from Boise State University. I didn't see one in the record. So we had no trouble finding a diploma. It says, the Board of Trustees, by virtue of the authority vested in it by law, and upon recommendation of the university faculty, does hereby confer upon so-and-so the degree of such with all of the rights and responsibilities pertaining thereto. That's a valuable piece of property. In fact, it's a mandatory step for certain kinds of licensing procedures. If you haven't got a JD, I suspect that you can't take the bar in Idaho. If you don't have certain kinds of college certifications, professional certifications, you can't go on and take the engineering degree or the nursing degree. So this is a very valuable piece of property. How can that not be a property right in that? We said there's a property right in driver's licenses. Well, Judge, again, we're looking at a very narrow, specific area of the law. And again, when we look at what the law is in Idaho, and again, confirmed by the Ninth Circuit in the Adobe White case, if there is no explicit state law or regulation that says that there is a property right in higher education, as Judge Nye has said, as Judge Windmill has said in that Duffin case, then it doesn't exist. Well, we've said that it's not only dependent upon state law. It certainly can be created by state law, but there are also certain ways in which the state can treat it that will be deemed under the 14th Amendment to constitute a valuable property right. This is the new property. And again, Judge, Idaho law has not done that. And that was the crux of Judge Nye's decision. And looking back to these other decisions having to do with higher education, that has always been, not always, because there's a very few of them. I have questions about due process, but I believe that the judge was right. So I was going to go to due process. So let's just assume for argument's sake that we find that there is a property right. You heard the other side. The hearing was allegedly inadequate. Cross-examination was inadequate. Time limitations. How do you respond to all that? Judge, I think when you look at the Boise State policy and procedure for due process for students, whether it's grades, whether it's revocation of a degree, whether it's suspension from school, the university, I think, does a pretty good job in their policies and procedures in going through that process, whether it be a grade, again, whether it be a suspension, whatever. They're not perfect. No process is perfect. But in this instance, it was more than adequate. Okay. Was she given adequate opportunity to cross-examine? She, in this instance, Judge. Your procedures provide for cross-examination. It's not direct cross-examination. It's an indirect cross-examination, but it does provide for questions to be supplied to witnesses. And there's nothing to preclude her from bringing witnesses in.  Is she entitled to talk to ask questions of Dean Law, who declined to testify for the university? Judge, I think that's a specific call for the moment. I mean, Dean Law took the position she was the investigator, so she wasn't going to testify. Well, that might explain why the university would not put her on, but was Ms. Dudley entitled to ask her to come and testify? So this is a university-available witness. That's a very different problem than trying to force Mike Dixon in. All right. Well, I think then we get into evidentiary arguments, and that's why I think when you look at a process at an institute of higher learning or even high schools and school districts, the standard is a whole lot lower than it is if we're in a courtroom going through evidentiary process. But this is a pretty serious proceeding. We're revoking a diploma. We are expelling her from school, which means she cannot come back and complete the diploma. So we're both taking away something that's been given in the past and preventing her from doing anything in the future about it. Well, that's a pretty serious proceeding. I think maybe the thing that most concerns me was Boise State telling her she should have 25 minutes. Counselor, we're going to chew up 30 minutes here just talking to the two of you, and 25 minutes is, I'm sort of dumbfounded. Well, Judge, again, I presume that that's been in place for a while. It's an arbitrary number. I can't answer that. It does appear to be an arbitrary number. I'm not sure that it's actually provided for by the rules. So I heard that she was able to say, I accessed my own documents. Was she given an opportunity to say, I didn't access any other person's data? Yes. I think what she said was, I accessed my own file, and there may have been hyperlinks to other people's files on my file. That was her explanation. But I think another key point, Judge, if we're looking at it from an evidentiary standpoint, is this was highlighted by Judge Nye also, that her file was off-limits to her. But by admitting that she accessed her file, she violated the Department of Health and Welfare's rules. So, again, that's an evidentiary issue, but nevertheless. I want to drill down on the cross-examination issue before we get out of time. Is it your position that she doesn't have a right to cross-examination in this context? No. She doesn't have a right? No, it's not my position that it is. Oh, that's not your position? No, because it was spelled out. So if she has the right, is it your position that – so my understanding of how this went is that the university presented its evidence first, and it was all on paper. So there was three or four declarations from witnesses saying, these are the facts relevant to this proceeding. Am I correct about that's how that went?  Okay. So if she has a right to cross-examination, how is that even possible in this context? Again, there was nothing to prevent her from calling any of these witnesses in person. That's not cross-examination. That's direct examination if she's going to call them for her own case. So the university presents statements of evidence from witnesses in part of its case, and then your own procedures say she's going to have an opportunity to propose questions to the university's witnesses to push back on their case. How does she even get to do that? Well, in this instance, she couldn't, Judge. But then if we go back to you said she has a right, then it didn't happen at all. So how is that not a violation of her rights? Well, again, Judge, I go back to the argument that this is not a legal proceeding. This is a university policy procedure. No, I understand that, which is why my first question to you was, is it your position that she has no right to cross-examination in this proceeding? And you told me that is not your position. If that is not your position, and instead you think she does have some right to cross-examination in this kind of a proceeding, she didn't get it, period. She couldn't have because of how the university decided to present its case. Well, Judge, there's a difference between having the right and then procedurally not being able to do it in this instance because of the fact that these witnesses were all testifying via affidavit. So there is a distinction. She did not physically get it in this case. But, again, we look at it, I think, from the standpoint that these university policies and procedures are run by school officials, not lawyers, not judges. The members of that student board are all volunteers. Two of them are faculty. One is a staff member, and two are students. I don't think that they could be held to the standard of a court in regard to— I mean, I understand that. So is there in the record any information about whether the university asked Mr. Dixon to show up at this hearing? I do not know if they did or not, Judge. Is there any evidence in this record to indicate whether the university asked Mr. Dixon any follow-up questions about the conclusions that he reached and why he reached them? There is none. So we don't have any transcripts of any telephone calls between Dixon and any university authority, so that might have been useful to be able to probe something like that. There should be e-mails between— E-mails, yes. That would be a paper record. But I believe there's some evidence that there were phone calls as well. Dean Law, who declines to participate, says she's not a witness. She's an investigator. She's an investigator. Why is she participating in the deliberations? As the— She's not a member of the board, right? She is not. She is not. She is an associate dean of students at the time, and when they're— under their policies and regulations, rules and regulations, if there is not a named complainant, that the dean of students acts as the complainant. Okay. So was Law the complainant? She was the— Or was it somebody else representing Law? No. It was Law representing the dean of students. Okay. So Law was the nominal— Correct, correct. —complainant. Then why was the complainant allowed to sit in on the deliberations? I would assume it would be the same as if a victim is sitting in on a criminal trial, Judge. I don't know if that's a great analogy. No, no. Law was allowed to sit in. The deliberations are the deliberations of the board, not the proceeding. Why was she allowed to sit in with the decision-makers while the decision is being made? I don't know, Judge. I don't know if that was part of the—or counter to the policies and procedures. It may not be reflected in any of the policies, but it feels intuitive that Law, who has made a judgment and is now asking another body to ratify that judgment and is the complainant on behalf of the university, would be allowed to sit in on those negotiations. I understand. This is an administrative proceeding. It is not a criminal trial. But it does feel a little funny that Law would be allowed in. Again, Judge, I don't have— She can supply additional testimony. We don't know whether—we have no transcript of any of that. We don't have any idea what happened behind those closed doors. But it does feel a little funny that, effectively, the prosecutor is allowed to go in while the judge is deciding it. Any other questions? I think I'm pretty far over my time here. Other questions? Thank you, Counselor. Okay, thank you. All right, let's put three minutes on the clock for rebuttal. Thank you, Your Honors. I don't think I'll need three full minutes unless you guys have questions. Well, I do have questions. So then, qualified immunity to the defendants, the individual defendants, do you agree that there was no clearly established law prior to this so that they are entitled to qualified immunity? Your Honor, qualified immunity, the clearly established analysis for a due process property interest is different than it would be for any other constitutional right. Because of the fact that the 14th Amendment doesn't set forth, in the language of that amendment, what rights you have, what rights an individual has. If you look at the First Amendment, that, you know. It wasn't even clearly settled right now whether or not there was a property interest, right? We'd probably be deciding that right now. So how are the individuals going to be held liable? Your Honor, I think it's clearly established. I think the analysis has to be a little bit different for property interest, and you see that in the Doe v. White case, the Ninth Circuit unpublished decision. You see it, and I've cited it in my opening brief, in Stroh-Snyder v. City of Nampa, where they look at the policies. They look at the policies to see if that clearly establishes it. I'm not using that as a, you know, a clearly established site because that's a District of Idaho case. But what you, what I think clearly establishes was the ISBOE policy that states that students have a due process right. How would it be apparent to university officials when they had had, when they've had Judge Windmill's prior decision saying that there wasn't a property right? And then Judge Nye would conclude that there isn't a property right. They wouldn't have known that at the time. So how was it clearly established? And then we've got the whole problem as to what processes do under Matthews v. Eldridge, which is a balancing test. How could you possibly anticipate that you have clearly violated the Constitution and should have known better? Your Honor, the argument was that it was not clearly established that Ms. Dudley had a due process property interest. Right. And I ended up drafting a surreply, and the court denied it on that issue because I thought the defendants were, started off with an argument that there was no clearly established property interest, and then going and saying, well, there's not a clearly established violation. But here, the Matthew issues doesn't, those don't come up in the clearly established analysis because it's just, is it clearly established that she has a due process property interest? And the ISBOE policy, I think, does that. So let's suppose the qualified immunity that your damages claim is off the table. What's left? Injunctive relief. And so does that go back down to the district court? Yeah. Or you're not asking us on this record to grant injunctive relief and reinstate your degree, or are you asking for that? It shouldn't be the remedy we remand if we go down that route, remand to the district court for further proceedings? Your Honor, I don't have a good answer for that. I, to the extent that you guys have the authority to do that, I would. So if we thought that your client did have a property interest, should we decide what process she's entitled to? No, Your Honor. I think that can be remanded. Okay. And so that would be for the district court. So if the district court thought that there was a due process problem here, then the district court could issue injunctive relief saying you can't take away her diploma and expel her until you conduct a second hearing? So you want a second hearing? Yes, Your Honor. I think that that would work. The parties have fully briefed what processes do. Am I right about that? You have briefed like what this hearing should have looked like? Yes, Your Honor. So what's the benefit of remanding that question to the district court? It's a question of law. Well, and I agree. My unfamiliarity is with how that process works, and I have not found the case law that addresses what you guys can decide on an issue like that. And so I think that that's why I'd ask this court to make those determinations. But I also understand that in most cases. Okay, so if we decided, one, that there was a property right, and, two, that there was some kind of a due process violation here, then what do we do? I think that you can reinstate, order the reinstatement of Ms. Dudley's degree. And I think that to some extent the case is going to have to be remanded to deal with the issue of the Matthews factors. And, Judge Forrest, I understand what you just said, but I think that we still have this case. And so I think that just a ruling that Ms. Dudley's rights were violated and that her degree needs to be reinstated, and then we'd probably presumably go back through the process. And so I'd have to think about how the district court's case fits in here. I assume there'd be an amended complaint at some point, but probably after additional process happened. I'm with you. All right, I think that's all the questions, and we've taken you way over. So I thank counsel for your helpful argument in this challenging and interesting case. The matter of Chelsea Dudley v. Boise State University et al. is submitted, and we are completed for the week. All rise.
judges: BYBEE, FORREST, Rodriguez